**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF KENTUCKY**
**LEXINGTON DIVISION**

| | |
|---|---|
| IN RE | CHAPTER 11 |
| CAMBRIAN HOLDING COMPANY, INC., *et al.*[1] | CASE NO. 19-51200 (GRS) |
| DEBTORS | JOINTLY ADMINISTERED |
| ELLEN KENNEDY, SOLELY IN HER CAPACITY AS THE LIQUIDATING TRUSTEE OF THE CAMBRIAN LIQUIDATING TRUST | PLAINTIFF |
| V. | ADV. NO. 19-5021 |
| ALLIANCE PRIME ASSOCIATES, INC., *et al.* | DEFENDANTS |

**MEMORANDUM OPINION AND ORDER**
**DENYING MOTION TO DISMISS**

This matter is before the Court on the Motion to Dismiss of Defendants Deutsche Bank AG, London Branch, Tennenbaum Opportunities Partners V, LP, and Tennenbaum Opportunities Fund VI, LLC, the Plaintiff's Objection, and the Defendants' Reply. [Term Loan AP ECF Nos. 28, 36, 37.][2] A hearing was held on April 22, 2021, and the matter taken under submission. The Motion to Dismiss is denied. The Plaintiff may amend the Complaint.

---

[1] The Debtors in these Chapter 11 cases are (with the last four digits of their federal tax identification numbers in parentheses): Cambrian Holding Company, Inc. (8203), Cambrian Coal LLC (3394), Apex Energy, Inc. (3455), C.W. Augering, Inc. (2875), Marshall Resources, Inc. (9735), PLM Holding Company LLC (7427), Bear Branch Coal LLC (0674), Clintwood Elkhorn Mining LLC (6910), Gatliff Coal LLC (5768), Perry County Coal LLC (4382), Ray Coal LLC (0981), Whitaker Coal LLC (8270), Pike-Letcher Land LLC (8952), Premier Elkhorn Coal LLC (8951), Raven Rock Development LLC (1351), Rich Mountain Coal LLC (1974), S.T. & T. Leasing, Inc. (0340), T.C. Leasing, Inc. (7705), and Shelby Resources, LLC (5085).

[2] This opinion requires a discussion of two separate loan facilities and reference to two different adversary proceedings. References to the record of the underlying matter, Adv. No. 19-5021, are cited as "Term AP ECF No." References to the record of Adv. No. 19-5022, otherwise referred to as the "ABL Credit Litigation", are cited as "ABL AP ECF No.".

1

I. **Civil Rule 12(b)(6) Standard.**

The Defendants move to dismiss the Plaintiff's Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) (incorporated by Federal Rule of Bankruptcy Procedure 7012). "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is plausible if the pleaded facts allow the court to draw a reasonable inference that the defendant is liable for the alleged misconduct. *Id.* If amendment cannot save the complaint, then dismissal is appropriate. *Newberry v. Silverman*, 789 F.3d 636, 646 (6th Cir. 2015).

II. **Relevant Facts and Procedural History.**

The facts alleged in the Complaint are accepted as true for this Motion and presented as such. The procedural history is based on the bankruptcy record and records in the relevant adversary proceedings.

A. **The Term Loan Credit Agreement.**

Certain non-debtor entities owned and controlled by James Booth, the Debtors' original principal equity owner ("Booth Non-Debtor Entities"), borrowed $43,500,000.00 from the Defendants Deutsche Bank AG, London Branch ("DB London"), as Lender, and Deutsche Bank Trust Company Americas ("DB Trust"), as Administrative and Collateral Agent, pursuant to a Term Loan Credit Agreement executed on July 10, 2013. [Term AP ECF No. 1 at ¶¶ 20-25; Exh. 1.]

The Booth Non-Debtor Entities subsequently defaulted under the Term Loan Credit Agreement and entered into several forbearance agreements in 2014 and 2015. [*Id*. at ¶¶ 28-29.] During this time, Tennenbaum Opportunities Partners V, LP ("Tennenbaum V") and

Tennenbaum Opportunities Fund VI, LLC ("Tennenbaum VI" and collectively with Tennenbaum V, the "Tennenbaum Defendants") joined as Lenders under the Term Loan Credit Agreement. [*Id.* at ¶ 29.] DB London and the Tennenbaum Defendants are referred to as the "2015 Lenders".

### B. The Sixth Amendment to the Term Loan Credit Agreement.

On September 21, 2015, Booth caused the Debtor Cambrian Coal LLC ("Cambrian Coal") to close on a transaction with TECO Diversified, Inc. ("TECO Transaction"). [*Id.* at ¶¶ 33-39.] The TECO Transaction allowed Cambrian Coal to acquire interests in several of the other Debtors. [*Id.* at ¶ 35.]

That same day, Booth caused the Debtors Cambrian Coal and Shelby Resources, LLC ("Shelby Resources") to execute an amendment to the Term Loan Credit Agreement ("Sixth Amendment"). [*Id.* at ¶¶ 40-44, Exh. 2.] The Sixth Amendment added Cambrian Coal and Shelby Resources as borrowers. [*Id.* at ¶ 44.] The Sixth Amendment also caused other Debtors to guaranty the obligations. [*Id.*]

Prior to the transactions, the Booth Non-Debtor Entities owed $31,396,020.74 under the Term Loan Credit Agreement. [*Id.* at ¶ 45.] The balance increased to $51,745,025.93 after execution of the Sixth Amendment. The additional loan proceeds were disbursed as follows:

1. $7,849,005.19 to lender as an Amendment Fee;
2. $2,500,000.00 to lender as a "Funding Fee";
3. $842,617.46 to lender for lender's legal fees;
4. $1,500,000.00 to a Booth Non-Debtor Entity that was treated as a loan from the borrowers; and
5. $7,657,382.59 to Cambrian Coal.

[*Id.* at ¶ 46.] Cambrian Coal quickly depleted the cash disbursement by loaning approximately $4 million to a Booth Non-Debtor Entity and transferring $1.1 million to DB Trust. [*Id.* at ¶¶ 48-53.]

3

### C. The ABL Credit Agreement.

Booth also caused the Debtors to incur additional liabilities for certain other obligations of the Booth Non-Debtor Entities. [*Id.* at ¶ 55.] The Booth Non-Debtor Entities were parties to a separate loan facility with Deutsche Bank AG New York ("DB NY"), as Lender, Administrative Agent and Collateral Agent, dated July 10, 2013 ("ABL Credit Agreement"). [ABL AP ECF No. 1, Exh. 1.] An amendment to the ABL Credit Agreement added Lenders Richmond Hill Investment Co., LP ("Richmond Hill") and Essex Equity Joint Investment Vehicle, LLC ("Essex"). [*Id.*, Exh. 2.] The Debtors assumed liability for approximately $40 million of additional debt under the ABL Credit Agreement and received little or no value in return. [Term AP ECF No. 1 at ¶ 56; ABL AP ECF No. 1 at ¶¶ 42-59.]

### D. The Debtors' Default Under the Loan Facilities.

The Debtors were insolvent on a consolidated basis when they assumed the debt under the two loan facilities. [Term AP ECF No. 1 at ¶¶ 54-60.] The Debtors defaulted multiple times and entered into numerous forbearance agreements before filing for chapter 11 relief on June 16, 2019. [*Id.* at ¶¶ 63-65.]

Between September 21, 2015, and June 16, 2019, the Debtors made only $2,741,146.71 in payments under the Term Loan Credit Agreement. [*Id.* at ¶ 66, Exh. 4.] Their prepetition obligation grew to over $78 million during the same period. [*Id.* at ¶ 67.]

### E. The Bankruptcy Proceedings.

The Debtors filed their chapter 11 petitions on June 16, 2019. An order approving joint administration was entered on June 18, 2019. [Case No. 19-51200, ECF No. 81.] An Official Committee of Unsecured Creditors was appointed on June 26, 2019. [*Id.*, ECF No. 142.]

The 2015 Lenders' interests under the Term Loan Credit Agreement were assigned to the Defendant Alliance Prime Associates, Inc. ("Alliance") on July 23, 2019. [Term AP ECF No. 1 at ¶ 15; Case No. 19-51200, ECF No. 283 at 10.] Alliance and DB Trust asserted claims against each of the Debtors in an amount of over $78 million under the Term Loan Credit Agreement, secured by liens on substantially all the Debtors' assets. [Term AP ECF No. 1 at ¶ 68.] They alleged that the priority of their liens was governed by an Intercreditor Agreement with the Lenders under the ABL Credit Agreement. [*Id*. at ¶ 69.]

On June 17, 2019, the Debtors sought approval of an agreement with the Lenders under both loan facilities for cash collateral use and post-petition financing. [Case No. 19-51200, ECF No. 26.] The Final Order Authorizing (A) Secured Post-Petition Financing on a Super Priority Basis Pursuant to 11 U.S.C. § 364, (B) Use of Cash Collateral Pursuant to 11 U.S.C. § 363 and (C) Grant of Adequate Protection Pursuant to 11 U.S.C. §§ 363 and 364 Since the Petition Date was entered on July 25, 2019. [*Id*., ECF No. 283 ("Final DIP Order").] The Debtors paid $440,000.00 in adequate protection payments pursuant to the Final DIP Order. [Term AP ECF No. 1 at ¶ 70.]

**F. The Adversary Proceedings.**

The Final DIP Order granted the Committee standing to prosecute claims arising from the Term Loan Credit Agreement and ABL Credit Agreement. [Case No. 19-51200, ECF No. 283 at 50.] The Committee filed two adversary proceedings seeking to avoid liens and recover transfers related to the loan facilities:

- Term Loan Litigation, Adv. No. 19-5021. On September 20, 2019, the Committee filed this adversary proceeding against Alliance, DB Trust, DB London, and the Tennenbaum Defendants alleging that the liens created by the Term Loan Credit Agreement are avoidable as constructively fraudulent under state and federal law, or as unperfected liens, and any payments made are recoverable for the benefit of the estate. The Committee also sought equitable

5

      subordination and turnover of adequate protection payments.

- <u>ABL Credit Litigation, Adv. No. 19-5022</u>.  The Committee filed a complaint against DB NY, Richmond Hill, and Essex that same day alleging that the liens created by the ABL Credit Agreement are avoidable as constructively fraudulent under state and federal law and any payments made are recoverable for the benefit of the estate.  The Committee likewise sought turnover of adequate protection payments.

Both adversary proceedings were stayed for over a year so the Debtors, Committee, and other interested parties could focus on resolving contentious issues preventing presentation and confirmation of a liquidating plan.  [*See* Term AP ECF Nos. 8, 11, 13, 15, 17, 20, 24; ABL AP ECF Nos. 8, 10, 13, 15, 18, 21, 24, 26, 28, 30, 32, 36, 38.]

      During this period of abeyance, the Committee was able to settle the ABL Credit Litigation.  The Committee resolved its claims against the Defendants in the ABL Credit Litigation in two stages.  On July 23, 2020, a settlement agreement between the Committee, Richmond Hill, and Essex was approved pursuant to Bankruptcy Rule 9019 ("Richmond Hill Settlement").  [Case No. 19-51200, ECF Nos. 1298, 1316.]  On January 8, 2021, a compromise between the Committee and the remaining Defendant DB NY was also approved under Bankruptcy Rule 9019 ("DB NY Settlement").  [*Id.*, ECF Nos. 1463, 1479.]  The ABL Credit Litigation was dismissed with prejudice on February 1, 2021.  [ABL AP ECF No. 40.]

      The parties to this proceeding also reached some agreements during the abeyance period.  The parties first stipulated to the dismissal of DB Trust ("Collateral Agent Stipulation") on August 13, 2020.  [Term AP ECF No. 17.]  The Collateral Agent Stipulation preserved the Plaintiff's claims and the remaining Defendants' defenses notwithstanding DB Trust's dismissal.

      The Committee then settled its claims against Alliance.  The Committee reached its settlement with Alliance as part of mediation conducted by Hon. Tracey N. Wise in late 2020 and early 2021 for the purpose of resolving objections to the Committee and the Debtors' joint

liquidating plan.  An Agreed Order memorializing the agreements reached in the mediation, including the Committee's settlement with Alliance, was entered on January 8, 2021. [Case No. 19-51200, ECF No. 1480 ("Mediated Agreed Order").]   Alliance was dismissed from this adversary proceeding on March 2, 2021.  [Term AP ECF No. 32.]

### G.  The 2015 Lenders' Motion to Dismiss.

The abeyance period expired on February 15, 2021, and the 2015 Lenders, as the only remaining Defendants, were obligated to answer or otherwise respond to the Complaint.  [Term AP ECF No. 24.]  On February 22, 2021, the 2015 Lenders filed a motion to dismiss all remaining counts against them.  [Term AP ECF No. 28.]  The 2015 Lenders argue dismissal is appropriate because DB London and DB Trust are both released from all liability as affiliates of DB NY under the DB NY Settlement.  [*Id*.]  The Tennenbaum Defendants do not claim affiliation with DB NY but argue that the Plaintiff's claims against them are derivative of the claims against DB Trust.  The 2015 Lenders alternatively argue that the Complaint fails to state a claim upon which relief can be granted.  [*Id*.]

On March 12, 2021, Ellen Kennedy, solely in her capacity as the Liquidating Trustee of the Cambrian Liquidating Trust, substituted as Plaintiff pursuant to the Third Amended Joint Plan of Orderly Liquidation.  [Term AP ECF No. 35; *see also* Case No. 19-51200, ECF No. 1542.]  The Liquidating Trustee opposes the 2015 Lenders' Motion and argues that the release in the DB NY Settlement does not extend to the 2015 Lenders.  [Term AP ECF No. 36.]  The Liquidating Trustee also argues that the Complaint sufficiently pleads the claims against the 2015 Lenders, but if the Complaint is deficient, an amendment is the appropriate remedy.  [*Id.*]

7

### III. Discussion.

#### A. The DB NY Settlement Does Not Release Any Claims Against DB London or DB Trust.

The 2015 Lenders argue that the broad release in Section 6 of the DB NY Settlement releases them from all liability as "affiliates" of DB NY. Section 6 provides:

> **6. Release of Settling Defendant by the Committee and Debtors' Estates**. Effective upon the Effective Date, the Committee and the Debtors, on behalf of themselves and on behalf of any person or entity claiming by or through them or the Debtors' estates (collectively the "Estate Releasors") agree to and shall be **deemed to have fully and generally released and discharged the Settling Defendant and each of its agents, attorneys, partners, associates, affiliates, successors, and representatives (collectively, the "Defendant Releasees")** from and against any and all manner of claims, causes of actions, suits, debts, dues, accounts, bonds, covenants, contracts, agreements, judgments, losses, damages, liabilities and demands of any kind whatsoever in law or in equity, whether known or unknown, suspected or unsuspected, contingent or fixed, including attorneys' fees and costs that any of the Estate Releasors now have, have had or may have against any of the Defendant Releasees, including, for the avoidance of doubt, the claims asserted in the Adversary Proceeding.

[Case No. 19-51200, ECF No. 1463-2 at 3 (emphasis supplied).]

The DB NY Settlement was approved under Bankruptcy Rule 9019. [Case No. 19-51200, ECF No. 1479 ("DB NY Settlement Order").] A court has discretion to interpret its orders approving settlement. *Travelers Indemn. Co. v. Bailey*, 557 U.S. 137, 151 (2009). A court may also take judicial notice of the record in construing the meaning of its orders. *See St. Louis Baptist Temple, Inc. v. FDIC*, 605 F.2d 1169, 1171-72 (6th Cir. 1979). A review of the DB NY Settlement Order and record supports that the broad release in the DB NY Settlement did not release the claims against the 2015 Lenders in this proceeding.

### 1. The DB NY Settlement Order and Related Documents Do Not Apply to the 2015 Lenders or the Term Loan Litigation.

The DB NY Settlement Order does not refer to the 2015 Lenders or this proceeding. It states that the DB NY Settlement, attached as Exhibit A to the Joint Motion, is approved as fair, equitable, and in the best interests of the Debtors' estate and creditors based on a review of (1) the Joint Motion; (2) the DB NY Settlement; and (3) "the record in Adversary Proceeding No. 19-5022 before this Court." [Case No. 19-51200, ECF No. 1479.]

The Debtors and Committee filed a Joint Motion to approve the DB NY Settlement on December 11, 2020. [Case No. 19-51200, ECF No. 1463.] The Joint Motion represents that Debtors, Committee, and DB NY are settling "all claims the Committee asserted against the Settling Defendant in Adv. Proc. No. 19-5022 and various related matters." [*Id*. at 1.] The Joint Motion describes only the Committee's investigation into the Defendants of the ABL Credit Litigation and represents that the settlement agreement discussed in the motion resolves that matter. [*Id*. at 2-3.] It does not identify or discuss any of the 2015 Lenders or any of the claims asserted herein.

The DB NY Settlement, attached as Exhibit A to the Joint Motion, was drafted to apply only to DB NY. [Case No. 19-51200, ECF No. 1463-2.] The recitals in the DB NY Settlement explain that the agreement is solely between the Committee and DB NY. [*Id*. at 1.] DB NY is identified in the singular as the "Settling Defendant" and the "Adversary Proceeding" is defined only as the ABL Credit Litigation. [*Id*.]

The DB NY Settlement only describes consideration exchanged between the Committee and DB NY. DB NY agreed to pay $850,000.00 in cash and waive its general unsecured and administrative expense claims in exchange for the release and dismissal of the ABL Credit

9

Litigation.  [*Id*. at 3-5.]  The DB NY Settlement does not describe any consideration exchanged between the Committee, DB London, or DB Trust for a release of the claims in this lawsuit.

Only the representatives for the Debtors, Committee, and DB NY signed the DB NY Settlement.  [*Id*. at 7-9.]  The agreement does not contain any signatures by representatives of DB London or DB Trust evidencing that they are bound by the settlement or release.

The lack of any support from the record of the ABL Credit Litigation also weighs against the 2015 Lenders.  Nothing in the ABL Credit Litigation record suggests the claims in this lawsuit were released as part of the DB NY Settlement.  The DB NY Settlement Order approves a settlement that was limited to the parties who signed the agreement and the claims brought in the ABL Credit Litigation.

The claims against the 2015 Lenders were not released upon approval of the DB NY Settlement.

> **2. The Bankruptcy Record Does Not Support Extending the Release in the DB NY Settlement to the 2015 Lenders.**

Approval of the DB NY Settlement Order was based in part on the record in the Debtors' bankruptcy cases, which supports the preceding interpretation.  The Mediated Agreed Order dismissing the claims against Alliance was entered on January 8, 2021, the same day as the DB NY Settlement Order.  [*Id*., ECF No. 1480.]  The Mediated Agreed Order specifically states that "the Committee shall not be dismissing the Term Loan Adversary against any party other than Alliance, and all such claims against other defendants in the Term Loan Adversary shall be preserved."  [*Id*. at 6.]  If the DB NY Settlement released the claims against the 2015 Lenders on January 8, there would have been no need for language in the Mediated Agreed Order preserving those claims to be filed in the record that same day.

The 2015 Lenders could have objected to the language in the Mediated Agreed Order. The Mediated Agreed Order was initially filed in the record on December 20, 2020. [*Id.*, ECF No. 1469.] Counsel for the 2015 Lenders received notice of the final hearing. [*Id*., ECF Nos. 1469, 1471, 1472, 1475.] They did not object to the language in the Order. The 2015 Lenders and the Committee also filed a joint motion to stay this proceeding on the same day that the DB NY Settlement Order and Mediated Agreed Order were entered. [Term AP ECF No. 23.] The 2015 Lenders failure to object to the Mediated Agreed Order and agreement to continue the abeyance period in this litigation suggests that they did not believe the DB NY Settlement released the claims against them either.

### 3.  Principles of Contract Interpretation Support This Conclusion.

An interpretation of the DB NY Settlement using traditional contract principals reaches the same result. The DB NY Settlement does not mention the 2015 Lenders or this litigation. They are only included if they are deemed "affiliates" in the release language and the only way to discover an affiliate relationship among DB London, DB Trust, and DB NY is to consider extrinsic evidence. But resort to extrinsic evidence is only permitted if the DB NY Settlement is ambiguous; it is not. *See Frear v. P.T.A. Indus., Inc.,* 103 S.W.3d 99, 106 (Ky. 2003).

Even if the DB NY Settlement were ambiguous, the evidence previously discussed does not show DB London and DB Trust were released. "A court must interpret a provision in a contract not in isolation, but against the backdrop of 'the contract as a whole, … the situation of the parties and the conditions under which the contract was written.'" *Russell v. Citigroup, Inc*., 748 F.3d 677, 681 (6th Cir. 2014) (citing *Frear,* 103 S.W.3d at 106). The prior discussion of the record in the adversary proceedings and bankruptcy case supports that the Committee and DB

11

NY intended to settle the claims in the ABL Credit Litigation and not any claims asserted against the 2015 Lenders in this matter.

The DB NY Settlement does not extend to the 2015 Lenders.

### 4. The DB NY Settlement Does Not Affect the Claims Against the Tennenbaum Defendants.

The Tennenbaum Defendants do not claim to be "affiliates" of DB NY. Rather, they argue that the Plaintiff's claims against them are derivative of the claims against DB Trust, which were released in the DB NY Settlement. The DB NY Settlement did not release the Plaintiff's claims against DB Trust, so this argument fails.

### B. The Complaint Sufficiently Pleads Constructive Fraud.

The parties agreed at the April 22 hearing that only Count II and Count VI remain. [Term AP ECF Nos. 38, 39.] These counts seek to avoid and recover prepetition and post-petition payments made pursuant to the Term Loan Credit Agreement because they were constructively fraudulent transfers. The 2015 Lenders argue that the Complaint is deficient because the Plaintiff does not identify which of the nineteen Debtors made each transfer.

The Plaintiff concedes that the Complaint refers only to the Debtors generally. But the Plaintiff identifies the specific transferors in her response and asks for leave to amend the Complaint.

Leave to amend a complaint should be freely given when justice requires. FED. R. CIV. P. 15(a)(2) (incorporated by FED. R. BANKR. P. 7015); *Church Joint Venture, L.P. v. Blasingame*, 947 F.3d 925, 934 (6th Cir. 2020). This proceeding has been stayed for over a year and is still in the early pleading stages. The identities of the specific debtor transferors are discoverable, and the Plaintiff represents that she will provide the information to the 2015 Lenders to the extent she

has not already. The 2015 Lenders are therefore not prejudiced if the Plaintiff is permitted to amend the Complaint to name the specific transferors.

The 2015 Lenders also argue that the Plaintiff has not sufficiently pleaded the other elements of constructive fraud. To plead constructive fraud, the Plaintiff must plead facts that show that the debtor made a prepetition transfer or conveyance when the debtor was insolvent, or was otherwise made insolvent by the transfer, and the debtor did not receive valuable or reasonably equivalent consideration in return to prevail under her state and federal law claims. *See* K.R.S. § 378.020; K.R.S. § 378A.050; 11 U.S.C. § 548(a)(1)(B). The Plaintiff must also plead facts that show the existence of a creditor with an allowable unsecured claim on the petition date to pursue state law fraudulent transfer claims under § 544(b). *Lyon v. Forbes (In re Forbes)*, 372 B.R. 321, 330 (6th Cir. 2007). The facts in the Complaint, accepted as true, allow a reasonable inference that the Defendants are plausibly liable under the Plaintiff's state and federal law claims.

   IV.   **Conclusion.**

Based on the foregoing, it is ORDERED the Motion to Dismiss [Term AP ECF No. 28] is DENIED. It is further ORDERED that the Plaintiff shall amend the Complaint consistent with the rulings herein within 7 days of entry of this Order.

___

**The affixing of this Court's electronic seal below is proof this document has been signed by the Judge and electronically entered by the Clerk in the official record of this case.**



Signed By:
*Gregory R. Schaaf*
**Bankruptcy Judge**
Dated: Tuesday, May 4, 2021
(grs)